## JOSEPH P. WOODBURY *vs.* THOMAS A. ROBBINS.

An allegation that a horse had the glanders at the time of sale is sustained by proof that at such time he had the seeds of that disease, which afterwards developed into the perfect disease.

ACTION on the case for breach of a warranty of a horse. At the trial in the court of common pleas, before *Perkins*, J. there was evidence tending to show that the horse was warranted sound and kind in every respect. The only alleged unsoundness was the disease known as the glanders. It was proved that the horse in fact had the glanders a few months after the sale, and there was evidence tending to show that the horse, when sold, had bunches or swellings under his throat which some of the plaintiff's witnesses testified indicated the presence or existence of the glanders, and others stated that they indicated the approach of the glanders.

For the defendant there was evidence tending to show that the horse was sound at the time of the sale, that he had no such swellings as testified by the plaintiff's witnesses, and that if there were such swellings, they did not indicate the presence or necessarily the approach of the glanders. Some of the witnesses on the part of the defendant testified that the glanders did not exist until the horse run at the nostrils, and there was no evidence that this horse ran at the nostrils until some days after the sale.

A veterinary surgeon, called by the defendant, stated that

he saw the horse several months after the sale, that when he saw him, the horse had a clear case of the glanders; that he judged the glanders were then in their early stages, and had not been on the horse much over a month, but possibly they had existed longer; that the description of the bunches or swellings given by the plaintiff's witnesses did not necessarily indicate the glanders; he thought they would more surely indicate a case of cold or catarrh; that swellings of the glands would indicate unsoundness in the horse, but that the glanders did not in fact exist, in his opinion, as a disease until there was a discharge from the nostrils of the horse. The plaintiff contended that if the horse had the seeds of the disease called the glanders, at the time of the sale, which in the progress of events or course of time would ripen into and become the glanders, and diminish the natural usefulness of the horse, this was sufficient evidence of the existence of the disease to show a breach of the warranty, although the disease had not then in fact become developed. The judge instructed the jury, among other things not excepted to, that the question was whether the glanders actually existed in the horse at the time of the sale; that a state of blood or condition of body which might render the horse predisposed to take the glanders, if he should be so exposed as to contract any disease, would not constitute the disease until the glanders actually existed in the horse; that any swellings of the glands, or seeds of the disease, which were not in fact the disease, and did not show its actual existence, would not be sufficient. The verdict being for the defendant, the plaintiff excepted to these instructions.

*S. H. Phillips*, for the plaintiff.

*O. P. Lord*, for the defendant.

CUSHING, J. The declaration and pleadings, and the nature of the case, made but one question for the jury, whether the horse in question had the glanders or not at the time of sale. It was for the plaintiff to prove this; and if he did, he was entitled to a verdict.

We dispose of the case here on certain expressions of the judge who tried the cause. He said truly that the general question was, whether the glanders actually existed in the

44*

horse at the time of the sale, and then proceeded to say " That a state of blood or condition of body, which might render the horse predisposed to take the glanders if he should be so exposed as to contract any disease, would not constitute the disease until the glanders actually existed in the horse; that any swellings of the glands or seeds of the disease, which were not in fact the disease, and did not show its actual existence, would not be sufficient."

We are not satisfied of the accuracy of the second of these propositions. It is true that a state of the blood constituting predisposition to a disease does not constitute the disease itself, any more than other forms of predisposition would. Thus, depression of mind may predispose a person to receive yellow fever, but such depression is not yellow fever. So, irregularity or debility of the digestive organs may predispose to cholera, but it is not cholera. In neither of these cases, can even the seeds of the specific disease be said to exist. Other causes must supervene to produce the specific disease, whether predisposition to it exist or not. Predisposition gives facilities for the disease to attack, but does not of itself develope into the disease. But as to seeds of disease, it is different. It is a figurative expression; it is not a logical one, but of sufficiently definite meaning. The seeds of a specific disease are the incipient state of the disease; a condition perfectly distinguishable from predisposition. To pursue the figure: soil prepared for planting is predisposed, in the language of medicine; yet, such predisposition is not the plant, either in its germinal or its grown state. But the seed is the plant in germ; it is the specific thing, and becomes in time the fully grown plant, unless prevented by external causes. So, in the case of a disease, such as smallpox, for instance, which is capable of being communicated to another, while it is in a latent state, and before the patient is himself conscious of its existence. The disease is in him, but undeveloped; he has the seeds of it in his system.

The jury, in the present case, were to decide the question of glanders. They had, in law, a right to judge whether the seeds of glanders did not exist; whether it was not a case

of incipient glanders; and if they came to that conclusion, then it was glanders, and, of course, unsoundness in violation of the warranty. This conclusion is the more absolute, in consideration of the fact that glanders are contagious like smallpox, which ground of distinction is admitted in the case of *Stephens* v. *Chappell,* cited by defendant's counsel, and is fully reasoned out by the court, who cited other cases to the same point, fully establishing that even the incipient and latent stage of diseases of this nature is unsoundness. *Stephens* v. *Chappell,* 3 Strobh. 80.

The moment that symptoms of glanders appear in a horse— indications of the incipiency of the disease—that is, if he really have the seeds of it in him, he is unsound, although it may be some time before the disease becomes fully developed in its most offensive conditions. And it is the future history of the case which is to show whether it was the glanders or not. Symptoms are not always decisive; but the result shows whether or not a true prognostication was deduced ·from the symptoms. If, in the words of the testimony here, the seeds ripen into the unmistakable glanders, then the seeds are the glanders: it is only the difference between inchoate and consummate glanders. In this view of the subject, we sustain the exceptions, and direct a new trial in the court of common pleas. *New trial granted.*