THE STATE *ex rel.* KECK *et al.* v. SEIBERT, *State Auditor.*

In Banc, November 5, 1895.

1. **Prosecuting Attorney, Disqualification of:** APPOINTMENT OF SPECIAL PROSECUTOR: CERTIFYING FEE BILL: STATUTE. Section 642, Revised Statutes, 1889, giving courts having criminal jurisdiction power to appoint special prosecuting attorneys to prosecute or defend causes in which prosecuting attorneys are disqualified, does not authorize the appointment of a special prosecuting attorney for the sole purpose of examining and certifying a bill of costs.

2. **Costs, Bill of:** CERTIFICATE OF CLERK: SUPPLEMENTAL BILL. The certificate of the clerk to a supplemental bill of costs, allowed by section 4419, Revised Statutes, 1889, must expressly state that none of the items included in it have before been presented for allowance and that the additional items were omitted f..m the former bill by oversight or mistake.

3. ———: WRITTEN ASSIGNMENT: ALLOWANCE. The assignee of a bill of costs who presents it to the state auditor for allowance must satisfy the latter that the bill has been transferred and that he is the trans-feree, and where the presentation is not accompanied by a written assignment it should be disallowed.

4. **Courts:** JUDICIAL NOTICE. Courts will take judicial notice as to who were elected to office at a general election and such notice embraces those elected to official positions in a county. And where the judicial memory is at fault, it may refer to documents of reference.

5. ———: ———: STATUTE. Courts will take judicial notice of a public statute.

6. ———: ———: PURCHASE OF FEES BY OFFICER OF COURT. Section 3751, Revised Statutes, 1889, prohibits an officer of the court from purchasing witness fees accruing after the commencement of his term of office, and the court will take judicial notice of the election and term of office of a prosecuting attorney in order to determine whether fees purchased by him accrued after his induction into office.

State ex rel. v. Seibert.

7. **Witness Fees:** ASSIGNEE: MANDAMUS. Assignees of witness fees can not maintain mandamus against the state auditor to compel him to allow a fee bill for such fees where it appears that one of the assignees is disqualified from purchasing them.

8. ———: ALLOWANCE: AUDITOR: MANDAMUS. Section 8606, Revised Statutes, 1889, makes ample provision for the proper settlement of accounts against the state by empowering the state auditor to subpœna witnesses, compel their attendance and to examine them and others on oath touching any material matter to be known in such settlement and mandamus will not lie to compel him to audit a fee bill in a criminal cause.

9. **Nonresident Witness:** FEES: MILEAGE. A resident of another state, under recognizance to appear as a witness in a criminal cause in this state, is entitled to mileage from the place of his residence and not simply from the state line. (SHERWOOD, J., dissenting).

## *Mandamus.*

PEREMPTORY WRIT DENIED.

In this proceeding for a mandamus against the auditor, the petition of relators, which, by agreement is substituted for the alternative writ, is the following: "The relators inform the court, that the respondent, Jas. M. Seibert, is auditor of the state of Missouri and as such auditor, it is his duty to audit and allow all criminal costs legally certified to him for allowance by the judges of the circuit court and prosecuting attorneys; that on the — day of January, 1894, a fee bill for costs assessed against the state of Missouri in the case of the state of Missouri against Wilson Howard, charged with and convicted of murder in the first degree, in the circuit court of Laclede county, was duly certified to the respondent, as auditor, by the judge of the circuit court and prosecuting attorney of Laclede county, allowing witness fees for witnesses on the part of the state as follows, to wit:  Henry C. Rice, $74.80;  A. Coffee, $106.70;  D. H. Smith, $322.85;  J. S. Bailey, $559.75;  M. G. Ward, $241.85;  H. Kaywood, $148.35;  J. C. McKnight, $154.50;  G. B.

Turner, $248.05; J. E. Turner, $246.80; J. K. Bailey, $167.00; Milton Jones, $162.00; C. Pace, $81.05; J. S. Taylor, $167.10; A. B. Carnett. $129.85; G. H. Malon, $86.05; T. S. Ward, $170.90; and M. S. Ward, $81.05.

"That all of said witnesses were on the part of the state, and were material and important and testified on the trial of the cause at two trials, and that no more than three witnesses were allowed to prove any one fact. That all of said witnesses resided outside of the state of Missouri, and were first summoned at their homes out of the state, but that all were re-summoned in this state, by legal process at the first terms of court at which they attended in this state. That when said cause was continued from time to time, said witnesses were notified by public proclamation of the judge, that they were discharged until the next term of court, and required to return to said court without further service, and that in pursuance of said summons and proclamation, they attended the several terms of court and testified at two trials on the part of the state. That when a change of venue was granted in said cause from Maries county to Laclede county, all witnesses for the state then present were placed under recognizance by the court and among those recognized are J. S. Bailey, J. C. McKnight and Hiram Kaywood, whose fees are in dispute. That when the cause was continued at the November term, 1890, of the Laclede county circuit court, all witnesses for the state then present were placed under recognizance, including the follow-persons whose fees are here in dispute, to wit: J. S. Bailey, J. C. McKnight, M. G. Ward, J. E. Turner, Milton Jones, D. H. Smith, G. B. Turner, and J. K. Bailey.

"That there was, and is now, money in the treasury appropriated to pay criminal costs; that the defendant

was insolvent and the offense charged is a capital offense and the defendant has been executed. That the fee bill is tendered herewith as a part of the petition in this case.

"That the relators purchased all of said fees, and took written assignments therefor and no other persons are interested therein. That the respondent as auditor of the state has refused and still refuses to audit said fee bill and issue a warrant for the fees so certified and due your relators who have no adequate remedy at law. Wherefore relators pray, etc."

The return of the state auditor, so far as necessary to quote, is as follows: "That a bill of costs in the case of State of Missouri v. Wilson Howard, convicted of murder in the first degree, was certified to him, the said auditor, for payment, by the clerk of the circuit court of Laclede county, where said case had been tried, after having been approved by the judge of the circuit court and the prosecuting attorney of said county; and all of the fees in said bill which were properly chargeable to the state have been allowed by him, the said auditor, and a warrant issued therefor on the treasurer; that at the time the case above referred to was pending, each of said witnesses named in relators' petition was a nonresident of the state of Missouri, and had been subpoenaed at their respective homes in the state of Kentucky; that there is no law authorizing such service, and that each of said witnesses attended the different terms of court in the case named under no compulsory process, but at their own option; that the entire portion of the fees claimed as set forth in relator's petition, except a small amount in each case for per diem, is for mileage of said witnesses in coming to Laclede county and returning to their homes in the state of Kentucky; that there is no law authorizing the payment of mileage by the state in such cases; that he, the said auditor,

has no power to audit a fee bill and issue a warrant therefor in the absence of a statute authorizing the same; that there is no statute authorizing the payment of mileage fees to nonresident witnesses in criminal cases.

"Respondent further states that he is informed and believes that although said witnesses were repeatedly in attendance upon the various terms of the circuit court when the case against the said Wilson Howard was pending; that none of said witnesses were examined upon the part of the state, nor did they testify at the trial when the said Wilson Howard was convicted, except A. Coffee and T. S. Ward; that the state is not liable and should not be required to pay the costs of witnesses repeatedly unnecessarily summoned and not examined; that this proceeding is not instituted by the witnesses who, it is stated in relator's petition, earned the fees respectively set out therein; that the relators herein state in their said petition that they have purchased the claims for such fees and are now the only parties in interest in the same; that the said John Newhouse, one of the relators herein, was at the time he examined and approved the fee bill in this cause the prosecuting attorney of Laclede county, where the case against Howard was tried.

"Your respondent further states that by reason of the approval of said fee bill by the said John L. Newhouse, the party in interest thereto, the same has not been approved as required by law and that respondent is not authorized to audit the same.

"Respondent says that the facts as set forth in relators' petition are not sufficient to entitle him to the relief prayed and he therefore asks that the peremptory writ be denied.    JAMES M. SEIBERT, Respondent.

"By R. F. WALKER, his attorney."

The answer to this amended return is the following:

"The relators for their answer to the respondent's amended return, respectfully inform the court that the facts as set forth in relators' petition and the alternative writ of mandamus, are true as therein stated; and further answering deny that all the fees in said fee bill which are properly charged to the state have been allowed by the auditor.

"Admit that each of said witnesses named in relators' petition was nonresident of the state of Missouri, and has been subpoenaed at their respective homes in the state of Kentucky, but deny that each of said witnesses attended the different terms of court in the case named under no compulsory process, but at their own option; and aver the facts to be, that after said witnesses were subpoenaed at their homes in the state of Kentucky, they came into this state to attend court, and were then subpoenaed in this state, and placed under recognizance by the court to attend from term to term, and at each term, before the final trial, were discharged by the judge by public proclamation to return at the next term of said court in pursuance to their recognizance.

"Relators further answering, inform the court that defendant was twice put upon trial, the first resulting in a mistrial; that at the first trial eight of said witnesses testified in the case, and at the second trial a less number testified because of defendant's change in the theory of the defense; that most of said witnesses were important and necessary in the impeachment of depositions and proffered evidence on the part of defendant, and all of said witnesses were regarded by the prosecuting attorney as important and necessary, and were subpoenaed under the orders of the court having

jurisdiction of the case, and these facts are verified by affidavits herewith filed.

"Relators deny that they are not the only parties in interest in the fees in controversy, but aver that they purchased all of said fees, and took written assignments therefor, which they tender in evidence, and are therefore now the only parties interested in said fees.

"Relators answering the charge that J. L. Newhouse, being interested, was incompetent as prosecuting attorney to examine and approve the fee bill, inform the court that at a subsequent term of the circuit court of Laclede county, said court appointed E. B. Kellerman special prosecuting attorney to examine and pass upon the fees in controversy, and also ordered the clerk of said court to make a supplemental fee bill for said costs, which supplemental fee bill and order of court has been filed with the state auditor and is made a part of this answer.

"Relators further answering, deny each and every allegation in respondent's amended return, not herein admitted or which is in conflict with relators' petition.

"J. W. FARRIS,

"Attorney for Relators."

To this answer respondent has demurred, assigning as grounds:

"That the same does not state facts sufficient to authorize the granting of the writ of mandamus in this cause.

"Because the respondent is without any authority in law to audit the account upon which this proceeding is based.

"Because said account has not been signed and approved by the prosecuting attorney as required by law.    R. F. WALKER,

"Attorney General, for Respondent."

The fee bill now in question is a supplemental one, and such bills in appropriate circumstances are sanctioned by section 4419, Revised Statutes, 1889.

Other statutory provisions bearing on the points in hand are as follows:

"Sec. 4411. The clerk of the court in which any criminal cause shall have been determined or continued generally shall, immediately after the adjournment of the court and before the next succeeding term, tax all costs which have accrued in the case; and if the state or county shall be liable under the provisions of this article for such costs or any part thereof, he shall make out and deliver forthwith to the prosecuting attorney of said court a complete fee bill specifying each item of services and the fee therefor.

"Sec. 4412. It shall be the duty of the prosecuting attorney to strictly examine each bill of costs which shall be delivered to him, as provided in the next preceding section, for allowance against the state or county, and ascertain as far as possible whether the services have been rendered for which charges are made, and whether the fees charged are expressly given by law for such services, or whether greater charges are made than the law authorizes, and if said fee bill has been made out according to law, or if not, after correcting all errors therein, he shall report the same to the judge of said court, either in term or in vacation, and if the same appears to be formal and correct, the judge and prosecuting attorney shall certify to the state auditor, or clerk of the county court, accordingly as the state or county is liable, the amount of the costs due by the state or county on the said fee bill, and deliver the same to the clerk who made it out, to be collected without delay, and paid over to those entitled to the fees allowed."

VOL. 130 mo—14

"Sec. 4414. When a fee bill shall be certified to the state auditor for payment, the certificate of the judge and prosecuting attorney shall contain a statement of the following facts: That they have strictly examined the bill of costs; that the defendant was convicted or acquitted, and if convicted, the nature and extent of punishment assessed, or the cause continued generally, as the case may be; that the offense charged is a capital one, or punishable solely by imprisonment in the penitentiary, as the case may be; that the services were rendered for which charges are made, and that the fees charged are expressly authorized by law, and that they are properly taxed against the proper party, and that the fees of no more than three witnesses to prove any one fact are allowed. In cases in which the defendant is convicted, the judge and prosecuting attorney shall certify, in addition to the foregoing facts, that the defendant is insolvent, and that no costs charged in the fee bill, fees for board excepted, were incurred on the part of the defendant."

"Sec. 4420. The judge and prosecuting attorney shall in no case tax the state or county with more than the costs of three witnesses to establish any one fact, nor with the costs of witnesses unnecessarily summoned and not examined, but the costs of such surplus or unnecessary witnesses shall, in the discretion of the court, be taxed against the party or attorney causing them to be summoned."

"Each witness shall be examined on oath by the court, or by the clerk when the court shall so order, or by the justice, as the case may be, as to the number of days of his actual necessary attendance, under subpoena or recognizance, and the number of miles necessarily traveled." R. S. 1889, sec. 5003.

Section 4408, Revised Statutes, 1889, requires that a witness in a criminal case who has been once sub-

poenaed or recognized to appear before any court, shall continue to appear before the court until the cause is finally disposed of; on his failure thus to attend, he is liable to attachment and fine. These quotations from the various statutory provisions, relating to costs in criminal cases, are preliminary to the questions this record presents.

*J. W. Farris* for relators.

*R. F. Walker*, Attorney General, for respondent.

(1) The statute in regard to witness fees is section 24 (formerly section 5003),{Laws, 1891, page 151. There is no law authorizing the subpoenaing of witnesses outside of the state. Such process can only be served in a county within the state. R. S. 1889, sec. 8928. The provisions of the statute in regard to witnesses in civil cases are applicable to criminal cases. R. S. 1889, sec. 4207. Recognizing witnesses who reside outside of the state is a mere form, without force or effect. R. S. 1889, sec. 4183. Witnesses' fees are a part of the costs in a case. Statutes in reference to costs must be strictly construed. Witnesses are only authorized to claim fees when there is an express statute authorizing them so to do. *Shed v. Railway*, 67 Mo. 687; *Williams v. Chariton Co.*, 85 Mo. 646; *St. Louis v. Meintz*, 107 Mo. 611; *Ford v. Railroad*, 29 Mo. App. 616; *In re Green*, 40 Mo. App. 491; *In re Murphy v. Spillane*, 22 Mo. App. 476. While the auditor is a creature of the statute, he is authorized to reject a claim presented against the state, unless the certificate accompanying the same is by law expressly conclusive. *State v. Hinkson*, 7 Mo. 353; *State ex rel. v. Auditor*, 61 Mo. 263, and cases cited. (2) In *Howland v. Lennox*, 4 Johns. 311, and *Melvin v. Whiting*, 13 Pickering, 184,

the court held that where witnesses resided outside of
the state their fees for mileage could not extend beyond
the state line.    In *Kingfield v. Pullen*, 54 Me. 398, a
like rule is announced.    In *Bank v. Austin*, 6 Wend.
(N. Y.) 548, the court holds that a foreign witness sub-
poenaed at the place of trial is not entitled to traveling
· fees or mileage.    In *Com. v. Wood*, 3 Binn. (Pa.) 414,
the court holds that where a large number of witnesses
were subpoenaed and were examined, the costs of those
not examined will not be taxed against the state.    A
similar rule is announced in *Taylor v. McMahan*, 2
Bailey (S. C.), 131.    In *Lyon County Commissioners v.
Chase*, 24 Kan. 774, where a witness had entered into
a recognizance in Kansas to appear at a criminal trial,
and subsequently moved from that state to Massachu-
setts and attended the trial from there, it was held that
he could only recover mileage fees for the distance trav-
eled in Kansas.    A witness subpoenaed at the place of
trial is not entitled to mileage to and from his place
of residence.    *The Sunnyside*, 5 Benedict, 162.    In the
case of the *Steamship Leo*, 5 Benedict, 486, the court
held that mileage of a witness subpoenaed out of the
state could only be taxed for a limited distance.    In
*White v. Judd*, 1 Metcalf (Mass.) 293, the court held,
following *Melvin v. Whiting, supra*, that mileage fees
of a witness residing outside of the state could only be
taxed to the state line.    The supreme court of Oregon
announced a like rule in *Crawford v. Abraham*, 2 Oregon,
163.    If, as is shown by the transcript of the record of
this case (*State v. Howard*), in which these fees are
claimed to have been earned, only three witnesses were
actually examined, then it was impossible for the judge
and prosecuting attorney to intelligently certify that
the other fourteen were material witnesses, and that
· not more than three had been subpoenaed to establish
any one fact.    Unless it appears that they made this

certificate with a knowledge of the facts, it amounts to nothing, and the auditor is authorized to look beyond it before auditing the fee bill. *State v. Hinkson, supra; State ex rel. v. Auditor, supra;* R. S. 1889, sec. 4420; *State v. Oliver,* 116 Mo. 188. (3) Section 642, Revised Statutes, 1889, does not authorize the appointment of a special prosecuting attorney to pass upon a portion of a fee bill. Such action on the part of a court is foreign to the purpose for which such section was enacted. (4) These parties have no such independent status as to entitle them to this writ. It certainly never was contemplated that each witness in a case should have the right of instituting a mandamus proceeding against the auditor upon his refusal to audit a fee bill. To prevent numerous suits and the consequent expenses attending the same, it has been wisely provided by statute that whenever the auditor may think it necessary for the proper settlement of any account he may examine the parties, witnesses, and others, on oath or affirmation, touching any matter material to the settlement of such account; and for this purpose he may issue subpoenas and compel witnesses to attend before him, in the same manner and by the same means allowed by law to courts of record. R. S. 1889, sec. 8606. The law further provides that if any person interested shall be dissatisfied with the decision of the auditor on any claim, account, or credit, the auditor shall, at the request of such person, certify his decision, with his reasons therefor, specifying the items rejected, if less than the whole, under the seal of his office, and refer the same to the general assembly. R. S. 1889, sec. 8610. The relators, therefore, had another adequate remedy at law. Mandamus will only lie where the relator has a specific right and the law has provided no other specific remedy. *Williams v. Cooper County,* 27 Mo. 225; *Dunklin Co. v. Dunklin Co. Ct.,* 23 Mo. 449;

*Adamson v. Lafayette Co. Ct.*, 41 Mo. 221; *State v. Mc-Auliffe*, 48 Mo. 112; *State v. Lubke*, 15 Mo. App. 152; *State ex rel. v. Newman*, 91 Mo. 445; *State ex rel. v. Williams*, 99 Mo. 291.

SHERWOOD, J.—The decisions are conflicting on the point whether a witness who resides in another state is entitled to fees to his place of residence, he having been subpoenaed or recognized at the place of trial, or brought from his residence to that place to testify. In *Howland v. Lenox*, 4 Johns. 311; *Melvin v. Whiting*, 13 Pick. 184; *White v. Judd*, 1 Met. (Mass.) 293; *Kingfield v. Pullen*, 54 Me. 398, it was held that the travel fees of a witness not subpoenaed, could not extend beyond the state line although they attended from another state for the express purpose of testifying, and did testify.

In *Bank v. Austin*, 6 Wend. 548, it was ruled that a witness whose attendance is secured at the place of trial by subpoena, is not entitled to traveling fees. A like ruling was made in *Crawford v. Abraham*, 2 Ore. 163, no distinction being taken between witnesses attending on subpoena or on request.

A witness, then a resident of the state of Kansas, entered into a recognizance in that state to appear at a criminal trial. Subsequently having changed his place of residence to Massachusetts, he returned from that state, and, in obedience to his recognizance, attended the trial, and it was held that he could only recover mileage fees in going and returning from the state line. *Board of Commissioners v. Chase*, 24 Kan. 774.

In *Hutchins v. State*, 8 Mo. 210, it was ruled that a witness resident of another state, but recognized here for his appearance as a witness would be allowed mileage from his place of residence. A case is referred to in North Carolina by name as supporting this view, and one referred to in Louisiana without name as of the

same effect, but what were the statutory provisions in those states in respect to such matters does not appear.

When that ruling in *Hutchins'* case was made, however, which was in 1843, the Revised Statutes of 1835 were in force, and Judge SCOTT, who delivered the opinion of the court, pointed out the danger that under the rule thus established and admitted "many unjust and unfounded claims will be preferred, and many abuses practiced on the state under its sanction." The next legislature, which assembled for the revision of 1845, evidently heeded the warning contained in this adjudication, because at the revising session of that year, they provided respecting fees, "That this act, like penal laws, should be construed strictly." Revised Statutes, 1845, section 29, page 504. And also enacted for the first time section 22, page 251, Revised Statutes, 1845, now in substance section 4412, requiring the strict examination of bills of costs, and the ascertainment "whether the services have been rendered for which charges are made, and whether compensation is expressly given by law for the services charged."

At the next revision, section 23, Revised Statutes, 1855, page 453, was added, now section 4414, wherein the judge and prosecuting attorney were required to certify that in the fee bill presented, they had strictly examined the bill of costs, etc., as required in section 22.

This section, 23, remained the same in substance in subsequent revisions (Revised Statutes, 1865, page 867, section 18; Laws, 1874, page 26, section 18; Revised Statutes, 1879, section 2110 until) the last revision, when an addition was required in section 4414 to be made in the certificate of the judge and prosecuting attorney to the fee bill, "that the fees of no more than three witnesses to prove any one fact are allowed."

These very stringent provisions relative to costs in criminal cases, enacted so soon after the adjudication

in *Hutchins'* case, and increasing in stringency as the years go by, must be regarded as greatly modifying the adjudicatory force of that ruling.

When the legislature treats of process and its service and of recognizances, it will be intended that such process can only be served within this state, and that such recognizances only possess obligatory force within its borders.   Neither process nor recognizances can have any extraterritorial operation. *State v. Pagels*, 92 Mo. *loc. cit.* 308; *State v. Butler*, 67 Mo. *loc. cit.* 62; *Board, etc., v. Chase*, 24 Kan. 774.   And it would be beyond the power of the legislature to authorize process to be effectual outside of this state. *Wilson v. Railroad*, 108 Mo. 588.

And it is well settled that all statutory bonds and recognizances entered into in the course of judicial proceedings and in accordance with the statute law of the *forum* where taken, executed in reference to such proceedings, are purely local in their nature, and their enforcement is bounded by, and confined to, the state where entered into, and outside of that sovereignty have no binding or obligatory force, and, consequently, can not be enforced in the courts of another state. Rorer, Interstate Law [2 Ed.], 72, *et seq.*

But the recognition of a recognizance as one of the means of securing the attendance of a witness in this state stands on the same footing as a subpoena, section 5003, *supra*.   Either method of service is valid, and "expressly authorized by law;" but for reasons already stated, the recognizances in this case could have no operation beyond the state line, no more than could a subpoena.

For many years this court, in obedience to strict statutory provisions, has sedulously maintained that no costs can be taxed except such as the law *in terms* allows. *Shed v. Railroad*, 67 Mo. 687; *Crouch v. Plum-*

*mer*, 17 Mo. 420; *State ex rel. v. Hill*, 72 Mo. 512; *Thompson v. Elevator Co.*, 77 Mo. 520; *Williams v. Chariton Co.*, 85 Mo. 646. This is the rule elsewhere. *Crofut v. Brandt*, 58 N. Y. 108, and cases cited; *City v. Meintz*, 107 Mo. 611; *State v. Oliver*, 116 Mo. 188.

At common law no recovery of costs was allowable, and when statutes were passed allowing costs they were always strictly construed. *Crofut v. Brandt, supra; Kneass v. Bank*, 4 Wash. C. C. 106; *Hart v. Fitzgerald*, 2 Mass. 509. The right to costs being thus purely statutory, such right can have no existence except the statute authorizing the item or items can be directly pointed out.

And the auditor acted properly in refusing to allow costs except to the extent stated as being justifiable, and for aught that can be seen a nonresident witness, recognized in this state to appear at a subsequent term, would still be entitled to his costs as aforesaid, in going and returning, notwithstanding he should return to his home in another state.

There are other reasons why the auditor properly refused to allow the fee bill presented; that bill was not certified according to law, in that the certificate to the fee bill does not state "that the fees charged are *expressly authorized by law*" but only that "compensation is given by law," etc. Sec. 4414, *supra.*

1. The foregoing is the principal portion of the opinion as prepared and delivered in division number two of this court. That opinion was concurred in in its general result of denying the issuance of a peremptory writ, on the ground that J. L. Newhouse, the prosecuting attorney who joined the circuit judge in certifying to the bill of costs presented to the auditor for allowance, and who is one of the relators and alleged assignees of said bill herein, was not competent, by reason of interest, to pass on or certify to, said claim.

Owing, however, to the amended return made herein by the respondent, and to the answer of relators thereto, and to the demurrer of respondent to such answer, which changes have occurred since this cause was transferred to court in banc, some additional observations are rendered necessary.

And in the first place as to the appointment by the order of the circuit court of Kellerman, it is alleged in the answer which makes the order of appointment and the fee bill a part thereof, that the circuit court of Laclede county "appointed E. B. Kellerman special prosecuting attorney to examine and pass upon the fees in controversy, and also ordered the clerk of said court to make a supplemental fee bill for said costs." The order referred to states as the reason of such appointment "that J. L. Newhouse, the prosecuting attorney of Laclede county, is an interested party in said fees."

The section under which this appointment was made, is a section providing that: "If the prosecuting attorney and assistant prosecuting attorney be interested or shall have been employed as counsel in any case where such employment is inconsistent with the duties of his office, or shall be related to the defendant in any criminal prosecution, either by blood or by marriage, the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause." Sec. 642, R. S. 1889.

And upon this section this question arises: Did the circuit court have any authority or jurisdiction in the circumstances already related, to make such appointment? The concluding words of the section "to prosecute or defend the cause," it seems must give a negative answer to the question propounded, because there was no cause then pending to be prosecuted or defended.

The correctness of this position is further strength-

ened and additionally exemplified by section 644, providing that: "The person thus appointed shall possess the same power and receive the same fees as the proper officer would if he were present," because it must be obvious that a prosecuting attorney, or one acting in his stead, receives no fees for discharging the duty of examining and certifying to a fee bill. And this position gathers additional force from rulings made in analogous cases.

Thus it has been ruled that no authority exists in a probate court to appoint an administrator for the sole purpose of correcting a mistake made in the deed of a prior administrator. *Grayson v. Weddle*, 63 Mo. *loc. cit.* 539 *et seq.*; nor for the single purpose of making a deed which his predecessor had failed to make. *Long v. Joplin, etc., Co.*, 68 Mo. 422; nor in a circuit court to call in the judge of another circuit merely to take the acknowledgment of a sheriff's deed in open court, the judge of the court being the grantee in such deed, *Lewis v. Curry*, 74 Mo. 49; nor has the judge of the criminal court of St. Louis power to call in the judge of another circuit to pass sentence on a prisoner, who had been convicted while the former judge was circuit attorney. *State v. Shea*, 95 Mo. 85.

These reasons and citations appear conclusive of an entire lack of power in the circuit court to appoint Kellerman for the single object aforesaid, and of the consequent invalidity of the certificate to the fee bill in question. It can not therefore be regarded as properly authenticated.

2. Other reasons occur which justify the respondent auditor in refusing to audit the fee bill under discussion.

The original fee bill which was before us on a former occasion and is before us now, as well as the petition of relators, which answers in place of the alter-

native writ, and the so-called supplemental fee bill, disclose that most of the cost items set forth in the original fee bill appear in the present one.

Now, section 4419, Revised Statutes, 1889, declares that: "When the clerk shall send a bill of costs to the state auditor or county court, as provided in the next preceding section, he shall expressly state in his certificate that he has not at any previous time certified or sent a copy of the same bill, or part thereof, for payment: *Provided*, that if the clerk shall, by oversight or mistake, fail to include any costs properly chargeable against the state or county in any fee.bill, he may make out and present, as hereinbefore provided for making out bills of costs, a supplemental bill for the costs so omitted."

In the present bill there is no express statement in the certificate thereto by the clerk "that he has not at any previous time certified or sent a copy of the same bill, or part thereof, for payment." Nor is there any statement either in such alleged supplemental bill or in its accompanying certificate that any of the items of costs therein mentioned, had failed of being included in a former bill by "oversight or mistake."

It is plain from the provisions of the section just quoted, that, *first*, no items of cost can be presented a second time for adjustment to the auditor; and, *second*, that no items of cost which should have been included in a former bill, can be included in a supplemental bill, unless it be stated or certified with, or in, the subsequent bill that such items fall within the purview of the proviso. The statute does not intend, contemplate, nor authorize that the auditor shall be harassed by repeated presentations for allowance of the same items of costs; on the contrary, it industriously guards against any such recurrence.

Again it is averred in relators' answer, "that they

purchased all of said fees, and took written assignments therefor, which they tender in evidence, and are, therefore, now the only parties interested in said fees." Such written assignments however, are not "*tendered in evidence,*" nor do they accompany the answer, nor if they did does it appear nor is it stated in the answer that profert of such written assignments was ever made to the auditor.   Manifestly, he could not safely audit a claim for fees until satisfied that such claim had been transferred, and that the claimants were such transferees.    This alone would constitute an insuperable objection to the allowance of relators' claim.

An additional reason occurs for the rejection of the claim in question.  It stands conceded on the pleadings and record herein, "that J. L. Newhouse, the prosecuting attorney of Laclede county, is an interested party in said fees."   Now, when did that interest accrue?   Was it prior or subsequent to his election as prosecuting attorney?   We can take judicial notice of who were elected officers at the general election in 1892, and such notice embraces those who were elected to various official positions in Laclede county in that year. Among that number is J. L. Newhouse, then elected prosecuting attorney.  1 Greenl. Ev. [14 Ed.], sec. 6, and cases cited; *Himmelmann v. Headley*, 44 Cal. 213; *Ragland v. Wynn's Adm'r*, 37 Ala. 32; Wade, Notice [2 Ed.], sec. 1412.   And where the judicial memory is at fault, it may resort to documents of reference."   1 Greenl., *supra.*   Turning to one of these, we find that J. L. Newhouse was elected prosecuting attorney at the general election in that year.   Lesueur's Manual, 1893–4, 152.

Under the public statute which will also be judicially noticed, he entered on the duties of his office on the first day of January next after his election.   R. S. 1889, sec. 632.   Turning then to the alleged supple-

mental fee bill, we find that a portion of the costs or fees therein mentioned accrued at the January term, 1893. And as the answer of relators' alleges that they are the owners of all the fees in question, it would seem that under the provisions of section 3751, Revised Statutes, 1889, Newhouse could not validly purchase any portion of the fees which accrued after his induction into office. As to that portion, certainly no mandamus should lie so far as he is concerned, because mandamus requires the doing of a specific thing, something which can neither be diminished, halved, quartered, nor otherwise subdivided. Besides, it was the duty of relators, especially after making that fee bill a part of their answer, to make it plain that none of their number was incompetent to become a purchaser or coassignee of the fee bill.

3. Furthermore, section 8606, Revised Statutes, 1889, makes ample provision for the proper settlement of any account against the state, authorizing the auditor to subpoena witnesses, compel their attendance and to examine them and others on oath, touching any matter material to be known in the settlement of such account in the same manner and by the same means employed by courts of record.

This section constitutes the auditor a *quasi* judicial officer for the adjustment of accounts presented him to be admitted. This being the case furnished of itself conclusive reason for denying relief by mandamus. We therefore deny the peremptory writ. BRACE, C. J., GANTT, BURGESS, MACFARLANE, and ROBINSON, JJ., concur in paragraphs 1, 2, and 3, but not in the first and prior portion of the opinion. BARCLAY, J., concurs in denying the writ.

SEPARATE OPINION.

GANTT, J.—I dissent from so much of the foregoing opinion as announces that a nonresident witness duly

subpoenaed in this state or having entered into a recognizance under the order of a court having criminal jurisdiction and complied therewith, is not entitled to his mileage, and, being convinced that if the opinion of my learned brother is to prevail it will change the universal practice in this state, I have thought best to state in a few words my reasons therefor.

Throughout our statutes governing criminal procedure the power of the courts to compel witnesses to enter into recognizances for their appearance at subsequent days and terms, is recognized. The witness is placed under the compulsory obligation to appear as effectually as if summoned, and the practice obviates the necessity of resorting to a second or third subpoena and thereby relieves the state and defendant of the cost of new process.

As to the objection that the process of the state can not be enforced beyond our borders, it is sufficient, I think, to say that, in this case, the state is in no position to raise that question. Her court did acquire jurisdiction over the witnesses when they appeared therein and did compel them to enter into the recognizance and the state certainly can not now be heard to complain that they obeyed this obligation to her by appearing and testifying. Nor am I at all prepared to concede that the contractual obligation assumed by the witness is void.

Having entered into this obligation I see no reason why it should not be enforced by our own courts if the witness or his property can be found in this state, nor do I see why it would violate the policy of any sister state to permit the enforcement of a judgment obtained in this state on the breach of such a recognizance.

As stated by my learned brother this court in *Hutchins v. State*, 8 Mo. 288, in an opinion by Judge SCOTT, held that a witness residing in another state

who was compelled to enter into a recognizance for his appearance before our courts was entitled to his mileage from his residence in said state. The proceeding in that case, as in this, was by mandamus. That result was reached in that case though the statute under consideration did not apply in express terms to a witness who was recognized. Section 20, chapter on fees, Revised Statutes, 1835, p. 272. The court said: "And if a witness is recognized on the part of the state, and attends under the recognizance, he is within the meaning of the act, though he was not actually summoned."

Section 5003, Revised Statutes, 1889, provides that "each witness shall be examined on oath by the court, or by the clerk when the court shall so order, or by the justice, as the case may be, as to the number of days of his actual necessary attendance under subpoena or *recognizance* and the number of miles necessarily traveled."

Section 5004 provides for a fee book to be kept by the clerk in which he is required to enter "the name of the witness, the number of days he has attended, and the number of miles he has necessarily to travel in consequence of the summons or *recognizance*."

It seems to me that this subsequent legislation purposely conformed the letter of the statute to its spirit as interpreted by this court, instead of avoiding the construction placed by this court upon the statute before amended.

I recognize the rule that no fees are allowed unless expressly given by statute but I think the nonresident witness who regards the obligation into which he has entered with the state and attends and testifies is entitled to his mileage from his place of residence *both by letter and spirit of an express statute*, and I find nothing in the statute upon which to base the distinction that his mileage should be restricted to our state lines.

Sound policy and justice alike dictate that the state should render some just compensation to a witness who attends our courts from our sister states in the same manner that we reward our own citizens for a similar service. I regard it as a matter of prime importance in the enforcement of the criminal law that the statute should continue to be construed so as to place the nonresident witness on the same footing in regard to his fees and mileage as a resident witness.

BRACE, C. J., BURGESS, MACFARLANE and ROBINSON, JJ., concur in my views on this point.